IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| JOANN WOOD, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 12-6027-CV-SJ-ODS ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

**ORDER AND OPINION REVERSING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS
AND REMANDING FOR RECONSIDERATION**

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying her application for disability benefits. The Commissioner's decision is reversed and the case is remanded for reconsideration.

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

# I. Determination of Plaintiff's Credibility

In evaluating Plaintiff's credibility (and ultimately finding her not fully credible), the ALJ made several significant statements that are not supported by the Record. For instance:

1. The ALJ discounted Plaintiff's testimony about the side effects from her medication because she allegedly did not report those side effects to her doctors. R. at 14. The Record demonstrates otherwise. E.g., R. at 283-87 (Plaintiff reported to Dr. Kempton that Lyrica made her "somewhat loopy"); R. at 291-92 (similar report). The Record also contains evidence that some of Plaintiff's medication was likely causing her gastrointestinal problems. E.g., R. at 358-60, 364-65. It may be that the medications were changed, or that only some of the medications caused these problems; however, it is not true that Plaintiff did not report the side effects to her doctors, so her alleged failure to report the side effects cannot be a basis for discounting her credibility.

2. The ALJ found Plaintiff's testimony about her daily activities was inconsistent with the information she supplied on her Function Report. R. at 14. During the hearing held in June 2010, Plaintiff denied performing any household chores or shopping. R. at 37-38. In the Function Report – which was completed more than one year prior – Plaintiff indicated she did some shopping and "easy housework" (such as dusting, or "general cleaning" that did not involve bending and lifting. While she cooked simple meals she was teaching her children to cook so she would not have to. She made beaded jewelry as a hobby, but was doing it less because she was not capable of doing it. R. at 172-79. The Function Report's description of what Plaintiff could do in April 2009 is not necessarily inconsistent with Plaintiff's testimony about what she could do in June 2010, particularly given a medical condition that is acknowledged to get worse over time. Moreover, even if the ALJ chose to credit the limitations in the Function Report, he was obligated to factor those limitations into the overall determination of Plaintiff's functional capacity. Instead, the ALJ essentially determined the Function Report and Plaintiff's testimony canceled each other, leaving her with no limitations whatsoever.

3. The ALJ noted Plaintiff cared for her children. This bare statement, without more, proves very little. The Record contains no specifics about what Plaintiff actually does to care for her children, and the fact has significance only insofar as it reveals something about Plaintiff's daily activities and functional capabilities. Given the age of Plaintiff's children it appears they are of an age that constant supervision is not required, and Plaintiff is undoubtedly assisted by her husband in this regard. The mere fact that Plaintiff has children and they are cared for does not say anything about Plaintiff's credibility.

## II. Evaluation of Medical Evidence

Plaintiff's primary care provider was Dr. Ronald Kempton. Dr. Kempton completed a form indicating Plaintiff would be incapacitated until March 21, 2009, and thereafter she would be limited to 5-10 hours of work per day, three days per week. Plaintiff was limited in her ability to pull files, lift more than twenty pounds, or engage in excessive bending or stooping. Dr. Kempton also opined that Plaintiff would experience "flare-ups" that would incapacitate her two to three times per week. R. at 325-28. The ALJ discounted this opinion because while Dr. Kempton opined that Plaintiff suffered from fibromyalgia, he had never performed any diagnostic testing. This certainly serves as a basis for discounting Dr. Kempton's opinion. Moreover, it appears that Dr. Kempton referred Plaintiff to other doctors for treatment related to her back, fibromyalgia, and associated pain, most notably Dr. Umar Daud (a rheumatologist) and Dr. Norman Baade (an osteopath). On this Record, it appears Dr. Daud or Dr. Baade (or both) are more properly considered Plaintiff's treating physician.

That said, the Record is lacking any opinion from these doctors as to Plaintiff's condition. The ALJ recited some of the diagnostic findings, R. at 11-12, but it is not clear how (if at all) the ALJ utilized those findings. Critically, there is no information from Doctors Daud or Baade regarding Plaintiff's functional capacity. While there is evidence the facet joint injections Dr. Baade administered provided some relief, it is not clear exactly how much relief was provided. This is significant because the ALJ relied on the effect of these injections to conclude that an impairment that can be controlled by

3

medication is not disabling – but there is no evidence demonstrating Plaintiff's condition was "controlled." As will be discussed, this issue is significant for its effect on the ALJ's determination of Plaintiff's residual functional capacity.

### III.   Determination of Plaintiff's Residual Functional Capacity

The ALJ determined Plaintiff retained the residual functional capacity to lift, carry, push and pull twenty pounds occasionally, ten pounds frequently, stand and walk for six hours a day, sit for six hours a day. He also determined Plaintiff needed to avoid climbing ladders, ropes and scaffolds but could occasionally climb ramps and stairs, stoop, balance, kneel, crouch and crawl. R. at 13. The Record is not particularly clear as to how this RFC was derived, as it is not suggested by the Plaintiff or any medical doctor. This RFC was formulated by the State agency disability examiner, which the ALJ acknowledged was "not a medical opinion." R. at 15; see also R. at 187-93. The opinion of a non-examining non-doctor hardly qualifies as substantial evidence. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace. Accordingly, the regulations provide that treating physicians will be recontacted by the Commissioner when the medical evidence received from them is inadequate to determine a claimant's disability." Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007). While other evidence may also be considered in ascertaining the claimaint's RFC, id., there must be some medical evidence. Here there is none, and the Commissioner should endeavor to obtain such evidence from Doctors Baade and Daud.

### III.  CONCLUSION

The ALJ's credibility determination is supported by some evidence, but not substantial evidence in the Record as a whole. The ALJ's determination of Plaintiff's

4

RFC is not supported by substantial evidence in the Record as a whole.  The case is remanded for solicitation of additional evidence and reconsideration of these issues.

IT IS SO ORDERED.

DATE: January 31, 2013

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT